IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ABBOTT V. ABBOTT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BILLIE JO ABBOTT, APPELLEE,

V.

WILLIAM C. ABBOTT, APPELLANT.

Filed January 26, 2021.    No. A-20-294.

Appeal from the District Court for Cherry County: MARK D. KOZISEK, Judge. Affirmed.

Nathan T. Bruner, of Bruner, Frank & Schumacher, L.L.C., for appellant.

Amanda M. Vogl, of Douglas, Kelly, Ostdiek, Snyder, Ossian, Vogl & Lookabill, P.C., for appellee.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

INTRODUCTION

The Cherry County District Court dissolved the marriage of Billie Jo Abbott and William C. Abbott (Carver), divided the parties' property and debts, and resolved issues related to child custody, child support, and alimony. On appeal, Carver claims only that the court erred when it did not offset Billie's premarital debt against her portion of the marital estate. We affirm.

BACKGROUND

Billie and Carver married in May 2006 and later had three children. Billie filed a complaint for dissolution of the marriage on May 16, 2018, seeking an equitable division of the parties' property and debts, custody of the children, child support, and alimony. In his answer and "Counter Complaint," Carver also sought an equitable division of the parties' property and debts, custody of the children, and child support.

- 1 -

Trial was held in October 2019. As the only issue relevant on appeal is Billie's premarital debt, we include only that evidence from trial which is relevant to that debt. The parties' joint property statement was received into evidence at trial. Section N of the joint property statement relates to "Premarital debts of wife," and the only item listed in that section is a "Navient" account which both parties valued at $12,950.16, with a notation by Billie that the valuation was as of the date of the marriage. Neither party testified regarding the Navient debt.

Pursuant to the district court's decree entered on January 2, 2020, the parties' marriage was dissolved and their property and debts divided. The court also resolved issues related to child custody, child support, and alimony. As relevant to this appeal, the district court addressed the Navient debt as follows:

N-1 Navient premarital debt: This debt was not addressed through testimony. While the parties listed the debt as premarital, it is not known whether the debt was paid off during the marriage, and if so, whether marital funds were used to pay the debt. Both those factors must be established. See *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). The court will not factor this account into any division of the marital estate.

On January 13, 2020, Carver filed a motion to alter or amend. As relevant to this appeal, Carver alleged:

Item N-1 was disregarded by the court. Item N-1 was agreed to by the parties. On . . . the joint property statement, the parties agreed that a) there was a premarital debt of [Billie], and b) the amount of that debt on the date of the marriage was $12,950.16. Item N-1 was not included in Section J [unsecured creditors] because as of the valuation date, the debt did not exist. It was paid off during the marriage. Further, the Pretrial Order requires that the parties are bound by the designations on the property statement; as a result, no evidence was adduced because the Pretrial Order bound the parties to the premarital nature of the debt identified as Item N-1. As a result, the property equalization payment should be reduced by $6,475.08.

In its order filed on April 1, 2020, the district court denied Carver's request to amend the decree regarding the Navient debt. The court stated:

Carver argues that the court disregarded this premarital debt. However, the court did address the debt and noted the evidentiary shortfalls. There was no testimony whatsoever regarding this debt. Its sole tether to the case is that it is listed as a premarital debt on Schedule N of the [joint property statement]. That is but one of three elements that must be proven. There was no evidence that it was paid off during the marriage and no evidence that marital funds were used to pay it off. Proof of both is required. See *Anderson v. Anderson*, 27 Neb. App. 547, 934 N.W.2d 497 (2019) and *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

Also on April 1, 2020, the district court filed an amended decree, but its treatment of the Navient debt remained the same as it did in the January 2 decree.

Carver appeals.

## ASSIGNMENT OF ERROR

Carver assigns that the district court erred when it did not offset Billie's premarital debt against her portion of the marital estate.

## STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019).

## ANALYSIS

In a dissolution of marriage proceeding, "'[i]f the parties fail to agree upon a property settlement . . . the court shall order an equitable division of the marital estate.'" *Dooling v. Dooling*, 303 Neb. 494, 507-08, 930 N.W.2d 481, 495-96 (2019). Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. *Dooling v. Dooling, supra*. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Dooling v. Dooling, supra*. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Id*. Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Id*. Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. *Id*.

Debts, like property, ought to also be considered in dividing marital property upon dissolution. *Anderson v. Anderson*, 27 Neb. App. 547, 934 N.W.2d 497 (2019). When one party's nonmarital debt is repaid with marital funds, the value of the debt repayments ought to reduce that party's property award upon dissolution. *Id*. See, also, *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

In the joint property statement, received into evidence at trial, both parties listed the Navient debt as Billie's premarital debt. And it is undisputed that the value of the debt was $12,950.16 as of the date of the parties' marriage. Although the record does not reflect that the Navient debt was student loan debt, both parties refer to it as student loan debt in their briefs.

Carver claims that because the parties stipulated as to the value of Billie's premarital debt on the date of marriage, "no evidence was necessary to prove the substance of the stipulation, to wit: the value of the premarital debt that was to offset Billie's award." Brief for appellant at 9. He contends that the absence of Billie's premarital debt as a current liability--it was not listed in section I, secured creditors, or section J, unsecured creditors, of the joint property statement--indicates that the debt had been satisfied. Marital funds were presumptively used to pay the marital debt, and "[a]s a result, the burden of establishing that Billie's premarital debt was paid off with something other than marital income shifts to Billie"; she produced no such evidence, and therefore the law required the trial court to offset Billie's marital share of the estate. *Id*. at 10.

Billie agrees that she brought $12,950.16 of Navient student loan debt into the marriage. However, she points out that the amount of the student loan debt alleged to have been paid during

- 3 -

the course of the marriage did not appear anywhere on the joint property statement; "There was no listing on the Joint Property Statement entitled 'student loan reduction' or 'loan repayment' in the marital asset section which was attributed as an asset to [Billie]." Brief for appellee at 10. Further, "There was no evidence, including testimony, anywhere in the record about a premarital debt reduction." *Id*. And while Carver "attempts to argue that marital funds were *presumptively* used to pay the premarital debt," he "failed to prove that ANY debt was even paid," and thus waived this argument. *Id*.

Billie claims that the parties only stipulated to the student loan debt as premarital, nothing more. We agree.

The only stipulation apparent from the joint property statement is that Billie brought a Navient debt of $12,950.16 into the marriage, and that such debt was premarital. Contrary to Carver's assertions, there is no stipulation or presumption that the Navient debt was paid off during the marriage. Although Carver points to the fact that the debt is not listed on the property settlement agreement in either section I, secured creditors, or section J, unsecured creditors, to show that the debt is no longer in existence, he himself notes in his brief that sections I and J are the "marital debt" sections on the property statement. Brief for appellant at 19. The Navient debt was premarital debt, and it would not have been necessary to include it in sections I or J.

There is no evidence in our record to show that Billie's premarital debt is no longer in existence. In fact, there was no evidence to show what amount, if any, of the premarital debt was paid during the marriage, let alone whether it was paid with marital funds. Compare, *Gangwish v. Gangwish, supra* (evidence showed amount of premarital debt paid off during marriage with marital funds); *Anderson v. Anderson, supra* (although husband testified wife's premarital debt was paid down during marriage, evidence at trial did not show what portion had been paid during course of marriage; thus evidence adduced by husband insufficient to prove his claim). Carver refers us to *Wiech v. Wiech*, 23 Neb. App. 370, 871 N.W.2d 570 (2015), in support of his argument that Billie's premarital debt should be offset against her share of the marital estate. In *Wiech*, like in the present case, the wife acknowledged she brought premarital debt into the marriage. However, the wife in *Wiech* also acknowledged the balance of the debt was reduced during the marriage and she testified about payments made during the marriage; these facts distinguish *Wiech* from the present case, wherein no such evidence exists.

Because there was no evidence presented to the district court regarding the amount of Billie's Navient premarital debt that was paid off during the marriage, and whether it was paid with marital funds, the district court did not abuse its discretion when it did not factor the premarital debt into a division of the marital estate.

CONCLUSION

For the reasons set forth above, we affirm the decision of the district court.

AFFIRMED.